**UNITED STATES of America,**

v.

**John D. SAMS, Defendant.**

**No. 2:14–MJ–1157–BO–1.**

United States District Court,
E.D. North Carolina,
Northern Division.

Signed Sept. 11, 2014.

Erin C. Blondel, U.S. Attorney's Office, Raleigh, NC, for United States of America.

### *ORDER*

TERRENCE W. BOYLE, District Judge.

■ This case was tried before the undersigned as a criminal trial on September 8, 2014, at the regular criminal term of United States District Court at Elizabeth City, North Carolina. The defendant, a resident of North Carolina, was charged with entering a closed area on a national wildlife refuge, in violation of 16 U.S.C. § 460k and 50 C.F.R. § 25.21, and destroying a plant on a national wildlife refuge, in violation of 16 U.S.C. § 460 and 50 C.F.R. § 27.51(a), in the Currituck National Wildlife Refuge ("CNWR").

The alleged violation occurred on the afternoon of June 11, 2014, a Wednesday. Testimony at trial included that of United States Fish and Wildlife Service ("FWS") Law Enforcement Officer Mike Canada ("Officer Canada"). CNWR consists of several tracts of land located north of the

town of Corolla, North Carolina on a narrow barrier island situated between the Currituck Sound on the west and the Atlantic Ocean on the east. The testimony at trial established that the boundary of CNWR extends across the entire barrier island at the location of the incident from the mean high water line in the west to the mean high water line in the east. Further, the trial testimony established, that the portion of the refuge where the incident took place does not have any kind of public road leading through it to a section of the barrier island to the north which is not part of CNWR. Officer Canada's testimony further established that the mean high water line is a fifty-year average of the location of the high water line. Officer Canada also testified that due to the rapid pace of erosion on North Carolina's barrier islands, the CNWR effectively extends to the water's edge of the Atlantic Ocean on its eastern boundary.

The evidence at trial also established that, at the site of the incident, FWS maintains a line of "Area Closed" signs on posts running north-south between the start of the dunes and the Atlantic Ocean. These signs inform the public that this portion of CNWR is closed to public use including the use of motorized vehicles. Areas of the refuge are closed due to endangered species activity. *Currituck National Wildlife Refuge Public Use Opportunities,* U.S. FISH & WILDLIFE SERVICE (last visited Sept. 10, 2014) http://www.fws.gov/currituck/public.html. One of the Refuge objectives is to "[p]rotect and improve the last remaining habitat of the endangered or threatened piping plover, loggerhead sea turtle and seabeach amaranth." *Currituck National Wildlife Refuge,* U.S. FISH & WILDLIFE SERVICE (last visited Sept. 10, 2014) http://www.fws.gov/currituck/.

At the date and time of the violation, Officer Canada observed Mr. Sams drive his vehicle on the beach parallel to the edge of the closed area and then perform a three-point turn during which his vehicle entered the closed area and crushed several plants inside the closed area. The government entered into evidence several photographs showing vehicle tracks and crushed plants at the location of the violation. Mr. Sams admitted that he entered the closed area during his own testimony. After hearing the evidence, the Court found beyond a reasonable doubt that the violations had been established.

■ Although Mr. Sams was initially driving outside of the closed area, he was driving on CNWR on an area without roads, on the beach, and therefore was driving an off-road vehicle ("ORV"). *See* Exec. Order No. 11,644, 37 Fed.Reg. 2877 (Feb. 9, 1972), *as amended by* Exec. Order No. 11,898, 42 Fed.Reg. 26,959 (May 24, 1977). By executive order, President Nixon required that the Department of the Interior publish regulations defining specific trails and areas for the use of ORV. *Id.* The regulations to designate which areas are open to ORV traffic must promote safety for all users, minimize damage to public lands and wildlife, and take into consideration endangered or threatened species. 43 C.F.R. § 8342.1. The designation process must include public participation, and include local landowners and other interested parties. *Id.* § 8342.2. Once a plan is approved, areas and trails must be clearly identified so that the public will be aware of the applicable limitations. *Id.* The National Wildlife Refuge System Administration Act of 1966, 16 U.S.C. § 668dd–668ee, closes national wildlife refuges in all states except Alaska to all uses until opened. 16 U.S.C. § 668dd(c). Therefore, operating an ORV is prohibited within national wildlife refuges except where FWS has specifically designated that ORV use is permitted, in

accordance with the aforementioned regulations. *Id.;* 18 U.S.C. § 3571. Thus where FWS fails to create a plan for ORV use, ORV use is prohibited.

CNWR does not have regulations in place to govern ORV traffic. Consequently it is also a violation to operate a motor vehicle within any part of CNWR without prior authority and is punishable by up to $5000, six months in prison, or both. 18 U.S.C. § 3571; 18 U.S.C. § 3581. By permitting unregulated ORV traffic on CNWR, defendant and others directly impact attempts to protect endangered species from human encroachment. Although the impact of ORV traffic on endangered species and risk to pedestrians is yet unmeasured, without an ORV plan in place, FWS is without the manpower to enforce many of the rules in place on heavily trafficked dates. Accordingly, it is a violation to operate an ORV on CNWR without authority from the Department of the Interior or its designee, and defendant must pay a $25 fine and special assessment.

SO ORDERED.